McGRATH *v.* McGRATH.

CANCELLATION OF INSTRUMENTS—MORTGAGES—HUSBAND AND WIFE —EQUITY.

Where defendant husband, in partnership with his son, sold his interest in the business to the son, the latter assuming a certain debt as part of the consideration of the purchase, but failed to pay the debt, defendant never having been released by said creditor, and the wife voluntarily gave

a mortgage on property which she owned to satisfy said debt, without taking an assignment of the demand against the husband, the mortgage is valid in the hands of the latter, to whom it was assigned, and the wife cannot maintain a bill to have the same annulled, no duty, no enforceable equity in the premises, arising from the marital relation, and plaintiff is in the same position she would be if she were not the wife of defendant.

Appeal from Gogebic; Cooper, J. Submitted October 11, 1918. (Docket No. 48.) Decided December 27, 1918.

Bill by Mary E. McGrath against John McGrath to annul a mortgage. From a decree for plaintiff, defendant appeals. Reversed, and bill dismissed.

*Herbert M. Norris,* for plaintiff.

*James A. O'Neill,* for defendant.

The bill is filed to annul a real estate mortgage and the notes evidencing the debt secured by it, and to compel the assignee of the mortgage to discharge it of record. The answer of defendant says that plaintiff does not own the mortgaged property, claims the benefit of a cross-bill, and for relief asks that plaintiff be decreed to convey the land to him, although it is admitted that plaintiff has the legal title to the premises. The plaintiff is wife of the defendant, and most of the facts are not in dispute. The story told by the evidence may be related in few words.

The defendant was in business as a blacksmith and otherwise at the city of Ironwood in the month of April, 1909, at which time he turned his business over to his adult son, upon the agreement that the son was to pay $739 for the stock and $50 a month rent for the property. Prior to that time, the son had no interest in the blacksmith business, but, under the style John McGrath & Son, was interested with his father

in the "log loader business." In the blacksmith busi-
ness, the son worked for a salary. A part of the
agreement made by the two in April, 1909, was that
the son should collect the "log loader bills" and pay
a certain debt owed to Nichols, Dean & Gregg, of St.
Paul, Minn. This debt was for supplies, some for
the blacksmith business, and owed by John McGrath,
and some for the other business, owed by the said
partnership. The exact proportions are not stated,
but an agent and salesman of the vendors estimated
that 90 per cent. of the unpaid account was the ac-
count of the partnership or of the son. The vendors
did not know of the arrangement made by the father
and son and never released John McGrath as debtor.
There was enough money coming due on "the log load-
er bills" to pay the debt, and it was all of it collected.
John McGrath went "west" and was gone two years
and eight months. His son continued the blacksmith
business, and was somewhat advised therein by his
mother, the plaintiff, who looked to the business, to
some extent, at least, for her living. Nichols, Dean
& Gregg were not paid and were pressing for pay-
ment of their debt. Under date July 18, 1911, plain-
tiff executed to them a mortgage upon certain prem-
ises, to which she had the legal title, to secure the
payment of $565.29, with interest, payable in install-
ments, according to seven notes which she made. This
mortgage defendant acquired from the mortgagees in
March, 1914, taking an assignment thereof to himself
and recording it. This is the mortgage which plain-
tiff seeks to have discharged.

The real estate described in the said mortgage is
the north 40 feet of lot 11, block 31, plat of the city
of Ironwood. In her bill, plaintiff charges that she
is owner in fee simple of lot 11, block 31, city of Iron-
wood. The testimony for plaintiff shows a warranty
deed of the south 100 feet of said lot to John McGrath

and Mary E. McGrath, his wife, and a warranty deed of the north 40 feet of said lot to John McGrath. There follows in the chain of title, as recorded, a quitclaim deed from John McGrath to Mary E. McGrath of said north 40 feet of said lot, which was recorded February 7, 1903, a quitclaim deed executed by John and Mary E. McGrath to John Francis McGrath, their son, dated October 1, 1902, conveying an undivided one-third interest in said lot 11, and a quitclaim deed from the son to John, his father, dated June 25, 1906, conveying said lot 11. It is the claim of plaintiff that the title to the north 40 feet of lot 11 is in plaintiff and of the south 100 feet she owns an undivided two-thirds interest, her husband, the defendant, owning an undivided one-third interest. This is the interest that defendant, in his testimony, claims in the said south 100 feet of lot 11.

We have found no testimony to that effect, but it appears to be assumed by counsel that the blacksmith business was carried on on the said south 100 feet of said lot 11, and it is the contention of plaintiff that she gave the mortgage in question to settle a demand which might have been enforced against said south 100 feet of lot 11. She testified that she supposed they (the creditors) could have closed the shop. She further testified:

"I gave the mortgage because I wanted to hold the property that they threatened to close up or take. Of course I considered that what was my husband's property was my property. We were partners, that is how I looked at it. I wasn't posted on the law."

No one disputed the validity of this mortgage in the hands of the mortgagees. Plaintiff says:

"The plaintiff claims that because the indebtedness of John McGrath and John McGrath & Son, was owing by said John McGrath, individually as to the amount contracted by him, while in business by him-

self, and owing by him as a partner of John McGrath & Son, for the whole of which said indebtedness the individual property of John McGrath was subject to levy and sale on execution at the suit of Nichols, Dean & Gregg, the said Nichols, Dean & Gregg never having been notified of John Francis McGrath's assumption of said indebtedness and never having accepted John Francis McGrath individually for the payment thereof, and because it was unknown to Mary E. McGrath that there was any dissolution of partnership between John McGrath & Son, or any assumption of individual liability on the part of John Francis McGrath for either the partnership indebtedness or the individual indebtedness of John McGrath, and that because the plaintiff gave the mortgage in question for the purpose of saving the rights of her husband in the south 100 feet of lot 11 and the buildings thereon, from levy and sale by Nichols, Dean & Gregg, for such indebtedness, that the finding of the court of the facts as they were found and the decree of the court was properly made and entered, and should be affirmed."

On the other hand, the defendant says:

"1. That under the agreement entered into between the defendant and his son, Francis McGrath, when the latter purchased the defendant's interest in the blacksmith and log-loading business in 1909, that he would pay the indebtedness then owing to Nichols, Dean & Gregg, and which promise was a part of the consideration for the transfer of the defendant's interest, it was, as between the defendant and his son, the latter's legal duty to carry out his agreement and pay that indebtedness.

"2. That plaintiff, having executed the mortgage at the request and for the benefit of her son, and for a debt which the latter had obligated himself to pay, the mortgage was supported by a sufficient consideration and was enforceable against her by the mortgagee, and the mortgage having been assigned to the defendant, he acquired all the rights of the mortgagee."

The court entered a decree in which it is found:

"The title to the north 40 feet of lot 11, block 31, of

the original plat of the city of Ironwood, at the time of the commencement of this action, and at the time of the hearing therein, stood in the name of the plaintiff, that the mortgage heretofore given by plaintiff to Nichols, Dean & Gregg, was given to secure an indebtedness, owing to the said Nichols, Dean & Gregg by John McGrath, and by John McGrath & Son, that the partnership between John McGrath and son was dissolved before giving of said mortgage to Nichols, Dean & Gregg, and that John Francis McGrath, son and one of the firm of John McGrath & Son, was to have assumed and paid the indebtedness of John McGrath and John McGrath & Son but that Nichols, Dean & Gregg were not advised of this arrangement and did not release John McGrath from such indebtedness. That such agreement was not known to Nichols, Dean & Gregg, neither was the same known to Mary E. McGrath, the plaintiff herein, that the mortgage given by the said Mary E. McGrath, to Nichols, Dean & Gregg was to secure the indebtedness above named and to prevent Nichols, Dean & Gregg from enforcing their claim against any property owned by John McGrath, that afterwards John McGrath paid Nichols, Dean & Gregg, the indebtedness aforesaid, and took an assignment of the mortgage, so given by the said Mary E. McGrath, to Nichols, Dean & Gregg, to himself, the said John McGrath, instead of having said mortgage discharged of record: and upon these facts, I find as a matter of law and equity: That John McGrath has no right to or interest in said mortgage by virtue of said assignment to him, and that the plaintiff, Mary E. McGrath, is entitled to have such mortgage discharged of record and her title clear from incumbrance thereof."

OSTRANDER, C. J. (*after stating the facts*). The case is a singular one. Counsel cite no adjudicated case in point, perhaps could not do so. We have found no case like it. Nor does counsel for the plaintiff point out the duty owed by defendant to plaintiff, performance of which will operate to cancel the mortgage in his hands. No duty, no enforceable equity in the premises, arises from the marital relation.

Mrs. McGrath is in no worse and no better position than she would be if she were not the wife of defendant. She did not pay his debt at his request, nor because her relations with him imposed upon her the duty to pay it. He provided for the payment of his debts. The fact that as between himself and his creditors, the debt not having been paid, he was liable to pay it, made the payment of it by her none the less her voluntary act. She might have had the demand assigned to herself and enforced it, in due season, against her husband and his property. She did not buy the demand, and we think it altogether improbable that she did not understand that as between her husband and her son the duty to pay the debt rested upon the son. We know of no rule which permits a court of equity to treat what was done as an equitable assignment of the demand against her husband, and no such idea is suggested by her counsel. And if such an idea was entertained, no action to enforce the demand in her hands could now be maintained unless the husband waived the operation of the statute of limitations. It may seem to be an ungenerous, an ungallant, thing that the defendant husband is doing, but we are impressed that the case, in law, is no different from what it would be if he were not her husband. And if he were not her husband, no one, we think, would contend that he had, in buying the mortgage, merely extinguished a debt which the holder of the mortgage might originally have forced him to pay. He does not own the mortgaged property, and there is therefore no merger. His intention to pay the debt is negatived. His right of recourse against the one who agreed to pay the debt is lost.

We feel constrained to reverse the decree and enter a decree here dismissing the bill, with costs.

BIRD, MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.